UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KURT D. KINDE and
DEBORAH L. KINDE,

          Plaintiffs,          Case No. 09-10131
                                                      Hon. Gerald E. Rosen

vs.

ELIZABETH GOSCHINSKI, *et al.*,

          Defendants.
_____/

**OPINION AND ORDER REGARDING DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT**

                At a session of said Court, held in
                the U.S. Courthouse, Detroit,
                Michigan on  March 8, 2010

                PRESENT:   Honorable Gerald E. Rosen
                                   Chief Judge, United States District Court

## I. INTRODUCTION

Plaintiffs Kurt and Deborah Kinde, a married Caucasian couple with two adopted African-American children, instituted this action on January 12, 2009. They allege that Defendants Coldwell Banker Preferred, its agents, Jim Stevens and Suzanne Boss, and homeowners Edward and Elizabeth Goschinski racially discriminated in their refusal to sell a home located in Novi Township, Michigan. Specifically, Plaintiffs assert claims of housing discrimination under the federal Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, and Michigan's Elliot-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101 *et seq.*

1

This matter is now before the Court on Defendants' Motions for Summary Judgment. Plaintiff has responded and Defendants have replied. Having reviewed and considered the parties' briefs and supporting evidence, the Court has determined that oral argument is not necessary. Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(e)(2), this matter will be decided on the briefs. This Opinion and Order sets forth the Court's ruling.

## II. FACTUAL BACKGROUND

On May 19, 2008, Plaintiffs made an offer to purchase the property in controversy for $250,000 by land contract.[1] Defendant sellers, Mr. and Mrs. Goschinski, accepted the offer, and the parties were scheduled to close the transaction on July 30, 2008, with immediate occupancy of Plaintiffs to follow.[2] Mr. and Mrs. Goschinski were represented by Defendant Suzanne Boss, a Coldwell Banker realtor who owned a home near the

---

[1] Although the residence is actually located in Northville, Michigan, it is located in a neighborhood which maintains the distinction of Novi Township. Plaintiffs describe it as an "exclusive community" consisting of approximately sixty homes whose residents elect to receive limited municipal services, are established as their own voting district, and "attempt to remain separate from the surrounding area." (Pls.' Resp. to Goschinski Mot. for Summ. J. 7.) The community is predominantly occupied by Caucasian residents. *Id*.

[2] As of the date the Goschinskis moved for summary judgment, Edward Goschinski had been residing in a nursing home for approximately three years. (Goshinski Br. in Supp. of Mot. for Summ. J., Elizabeth Goschinski Dep., Ex. 6, p. 28:14-25.) He never met or spoke with Plaintiffs. (Goschinski Br., Deborah Kinde Dep., Ex. 5, p. 65:12-22.) According to Ms. Boss, Edward John Goschinski, Jr., Mr. Goschinski's son and Power of Attorney, signed the closing documents on his father's behalf on July 23, 2008, seven days before the scheduled closing date. (Pls.' Resp. to Goschinski Mot., Suzanne Boss Dep., Ex. I, p. 79:2-7, 79:21-24.) The notarized date of the documents is July 30, 2008. (Pls.' Resp. to Goschinski Mot., Ex. J.) Mrs. Goschinski never signed the documents.

property. Ms. Boss had been working under the supervision of Defendant Jim Stevens, a Coldwell Banker real estate broker. It is uncontradicted that Mr. Stevens never met or spoke with Plaintiffs or Mrs. Goschinski.

Prior to the scheduled closing date, Plaintiffs made arrangements with Mrs. Goschinski to store personal items on the property. On June 10, 2008, Plaintiffs moved several items into the basement of the residence. According to Plaintiffs, this was the first time they visited the property with their two adopted African-American children. (Pls.' Compl. ¶¶ 14-15.) Nearly a month later, on July 6, 2008, Mrs. Goschinski contacted Plaintiffs and informed them that there had been a basement flood which damaged some of their personal property. Upon visiting the property with their children three days later, Plaintiffs observed that the septic tank was being pumped. Concerned about the condition of the septic system, Plaintiffs submitted an addendum to the purchase agreement which would require Defendant sellers to acknowledge that the septic system was "past its life expectancy" and to agree to replace the entire system. They also sought to require Defendant sellers to hire an inspector whom Plaintiffs had chosen to perform an inspection and to prepare an estimate for replacement.[3] (*Id.* at ¶¶ 16-18; Pls.' Resp. to Coldwell Banker, *et. al.* Mot. for Summ. J., Ex. C.) The sellers did not agree to the addendum, and it appears that they thereafter hired their own inspector to perform an

---

[3] The original purchase agreement already contained a provision whereby the sellers agreed to provide an inspection of the septic system at their expense and to assume responsibility to see that any necessary repairs were made prior to closing the transaction. (Goschinski Mot., Ex. 2, p. 3.)

3

inspection of the system, which occurred on July 21, 2008. The resulting report indicated that, after replacement of the dosing pump and repairs to the drain field, the system would function properly. (*See* Pls.' Resp. to Goschinski Mot., Ex. D.)

Unsatisfied with the report, Plaintiffs attempted to renegotiate the purchase agreement and asked the sellers to guarantee the integrity of the septic system for 120 days after the closing date. In an email dated July 22, 2008, they sent an addendum requesting such guarantee to William Law, their real estate agent, and stated "[w]e need this addendum presented and signed by the 24th of July at noon or we will withdraw our offer to purchase based on an unsatisfactory inspection report."[4] (Pls.' Resp. to Goschinski Mot., Ex. F.) The same day Mr. Law forwarded the email to Ms. Boss, who apparently then communicated the request to Mrs. Goschinski. (Boss Dep. 81:17-25.) Mrs. Goschinski was not willing to renegotiate the terms of the purchase agreement. Subsequently the transaction did not close.

The reasons that the transaction did not close are in dispute. Plaintiff Deborah Kinde testified that although at the time of the July 22, 2008 email she and her husband were not willing to complete the sale without the addendum, they ultimately did receive adequate information from the inspector regarding the septic system and intended to proceed with the scheduled closing as previously agreed. (Deborah Kinde Dep. 70:18-25.) Plaintiffs claim that on July 29, 2008, one day before the scheduled closing date,

---

[4] Plaintiffs allege that they also verbally offered to receive the property "as is" with regard to the system if the sellers would reduce the price by $20,000. (Compl. ¶ 22.)

4

Mrs. Goschinski informed them that she would not follow through with the sale due to her sentimental attachment to the property. (Compl. ¶ 24.) They claim she informed them that she could not "do this to my neighbors," and asked, "You aren't going to sue me, are you?"[5] (Compl. ¶ 28.) They also allege that Mrs. Goschinski previously informed them that she could not guarantee the septic system because if they decided to adopt more children and add bedrooms to the house, the system was likely to fail. (*Id.*) Mrs. Goschinski denies the comment regarding her neighbors, but admits to asking Plaintiffs whether they would sue her. (Elizabeth Goschinski Dep. 57:4-58:19.) William Law, Plaintiffs' real estate broker, testified that the emailed addendum was no more than a "threat" by Mrs. Kinde, that the issue was subsequently resolved, and that Plaintiffs, himself and Ms. Boss intended to proceed with the transaction as planned. (Pls.' Resp. to Coldwell Banker Mot., William Law Dep., Ex. G, pp. 30-37.)

The day before the scheduled closing date, Mr. Law testified that Ms. Boss called him to explain that Mrs. Goschinski had changed her mind. (*Id.* at 44:1-45:3.)[6] Mrs.

---

[5] Plaintiffs have not specified where, nor when, this conversation took place. It appears from Mrs. Goschinski's deposition testimony that the conversation occurred when Plaintiffs visited the property after the unsuccessful closing in order to pick up their belongings which had been stored on the property.

[6] During his testimony, Mr. Law indicated that he believed, based on prior representations made by Ms. Boss, that Mrs. Goschinski decided not to complete the transaction due to her nostalgia and reasons involving "meetings" with her neighbors. (Law Dep. 45:18-20, 46:22-48:2.) Plaintiffs posit that during these meetings, Mrs. Goschinski's neighbors convinced her not to complete the sale due to the racial status of Plaintiffs' children. The only basis for that inference on this record is Mr. Law's

5

Goschinski later testified that she did not attend the closing because she thought doing so would be futile since she had no intention of signing an addendum guaranteeing the septic system and she believed that Plaintiffs would not complete the sale without one. (Goschinski Dep. at 42:1-23, 43:2-4, 44:9-13, 56:17-57:7.) She testified that Ms. Boss continued to urge her to agree to guarantee the system in order to complete the transaction, but that in her mind the transaction had failed on the date she received and declined Plaintiffs' second addendum request. (*Id*. at 43:18-44:10.) Ms. Boss testified that she did not receive any indication from Plaintiffs or their agent that they were willing to complete the transaction without the addendum, and that she prepared the closing documents despite the disagreement in hopes that Mrs. Goschinski would ultimately agree to guarantee the system and complete the sale. (Boss Dep. 71:21-72:18, 107:21-108:3.)

On July 31, 2008, Defendants re-listed the property with Coldwell Banker for $230,000—$20,000 less than the purchase price which Plaintiffs and Defendants had agreed upon. (*See* Pls.' Resp. to Goschinski Mot., Ex. E.) Both Mrs. Goschinski and Ms. Boss testified that at the time of re-listing, Mrs. Goschinski was no longer willing to sell the property by land contract and that the housing market had declined. (Goschinski Dep. 124:18-22, 129:9-12; Boss Dep. 108:12-25.) Plaintiffs have not filed an action in any court for specific performance of the purchase agreement or for monetary damages

---

testimony that Ms. Boss at some unknown time told him that Mrs. Goschinski was nostalgic and frequently met with her neighbors. (*Id.*)

associated with the closing.[7]

The gravamen of Plaintiffs' complaint is that, Mrs. Goschinski refused to allow Plaintiffs to personally inspect the septic system and refused to attend the scheduled closing to complete the sale of the property only upon learning of the Plaintiffs' adopted African-American children, thus discriminating on the basis of Plaintiffs' familial status and the race of their adopted children and interfering with their rights to fair housing under federal and state fair housing laws. Ms. Boss conspired with Mrs. Goschinski, they contend, to prevent the sale by refusing to allow Plaintiffs' inspection of the system and by agreeing that Mrs. Goschinski would not attend the closing. As her employing real estate broker, Defendant Jim Stevens is responsible for the actions of Ms. Boss, as is she and Mr. Steven's employer, Coldwell Banker.

## III. ANALYSIS

**A.    The Standards Governing Defendants' Motions For Summary Judgment**

**1.    Rule 56(c)**

Through the present motions, Defendants seek summary judgment in their favor on each of Plaintiffs' federal and state law claims. Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to

---

[7] During his deposition, when asked whether, given the choice, he would prefer monetary damages or specific performance of the contract, Mr. Kinde testified, "[w]e can't live in that house." (Goschinski Mot., Kurt Kinde Dep., Ex. 5, p. 22:6.)

7

judgment as a matter of law." Fed. R. Civ. P. 56(c). As explained by the Supreme Court, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

In deciding a motion brought under Rule 56, the evidence must be viewed in a light most favorable to the nonmoving party. *Matsushita Electric Industry Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). However, "[w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). "The mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006)(alteration, internal quotation marks, and citation omitted).

**2.    Rule 12(b)(6)**

Mr. and Mrs. Goschinski also seek dismissal pursuant to Rule 12(b)(6). Fed. R. Civ. P. 12(b)(6). Because the present motion was filed after Mr. and Mrs. Goschinski answered the complaint, the motion is untimely. Rule 12(b) requires that a "motion making any of these defenses shall be made before pleading." Fed. R. Civ. P. 12(b). However, the Sixth Circuit has held that post-answer Rule 12(b)(6) motions may be

considered as motions for judgment on the pleadings under Rule 12(c).[8]  Fed. R. Civ. P. 12(c); *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 n.1 (6th Cir. 1988). Motions for judgment on the pleadings under Rule 12(c) are analyzed using the same standard employed for a motion to dismiss under Rule 12(b)(6).  *United States v. Vehicle 2007 Mack 600 Dump Truck*, -- F.Supp.2d --, 2010 WL 199607, at *7 (E.D. Mich. 2010). The Court must accept as true all well-pleaded material allegations of the pleadings of the opposing party, but is free to reject unwarranted factual inferences and legal conclusions. *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008); *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008).  The motion may be granted only if no material issue of fact exists and the moving party is clearly entitled to judgment as a matter of law. *Tucker*, 539 F.3d at 549.

**B.     Plaintiffs have Failed to Establish a *Prima Facie* Case of Housing Discrimination Under the Fair Housing Act and Michigan's Elliott-Larsen Civil Rights Act**

In separate motions Defendants Mr. and Mrs. Goschinkis and Defendants Coldwell Banker, Jim Stevens and Suzanne Boss argue that Plaintiffs have failed to establish a *prima facie* case of housing discrimination.  The Goschinskis argue that race did not play a role in their decision to terminate the sale of the house—indeed they were unaware that Plaintiffs had adopted African-American children at the time the purchase agreement was signed—and they maintain that they ultimately did not refuse to complete the transaction.

---

[8]  Rule 12(c) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).

The Goschinskis also assert that the property was subsequently re-listed at a lower price due to their unwillingness to utilize a seller-financing arrangement and to the decline in the housing market. At a minimum, they note that it is uncontested that neither Plaintiff has ever met or spoken to Mr. Goschinski, and argue that the matter should be dismissed as to him. The Coldwater Banker Defendants separately argue that they played no role in the parties' failure to complete the sale of the property. Rather, they facilitated the making of the offer and the acceptance of the purchase agreement, and made substantial efforts to complete the transaction even after Plaintiffs attempted to renegotiate the agreement. The only reason the transaction did not close, they contend, is that Plaintiffs insisted on an addendum to which co-Defendant sellers would not agree and without which Plaintiffs would withdraw from the purchase agreement. Moreover, they argue that they did not meet Plaintiffs prior to the transaction falling through, were unaware of the racial status of Plaintiffs' children, and were in no way involved in the co-Defendant sellers' decision not to attend the scheduled closing. They, too, assert that the reason for the subsequent re-listing of the property at the lower price was Mrs. Goschinski's unwillingness to consider a land contract financing option and the decline in the housing market.

In response, Plaintiffs argue that Mrs. Goschinski only refused to consummate the sale of the house upon discovering that Plaintiffs had adopted African-American children. They maintain that the email seeking an addendum did not constitute a withdrawal from the purchase agreement, but rather was intended to be a communication solely between themselves and their real estate agent. Regardless, they assert that they later received

adequate assurance of the condition of the septic system from the sellers' inspector and were prepared to close the transaction as scheduled. The sale did not close, they argue, because Defendant sellers decided they could not sell the property to persons with African-American children. As to Mr. Goschinski, they reason that since he is listed as a seller on the purchase agreement, he necessarily must have conferred with Mrs. Goschinski regarding the sale. Finally, with respect to the Coldwater Banker Defendants, Plaintiffs argue that Ms. Boss was aware of the race of the children as a resident and active member of the exclusive community in which the residence was located, and more importantly through her dealings with Mrs. Goschinski. They argue that Ms. Boss was involved in Mrs. Goschinski's refusal to hire Plaintiffs' inspector and that she agreed that Mrs. Goschinski would not attend the closing. Coldwell Banker and Jim Stevens, they assert, are vicariously liable for Ms. Boss's actions.

**1.     The Evidentiary Standards Applicable To Federal and State Housing Discrimination Claims.**

Plaintiffs allege racial discrimination in the sale of real property in violation of the Fair Housing Act, 42 U.S.C. §§ 3604, 3605 and 3613,[9] and Michigan's Elliot-Larsen Civil

---

[9] 42 U.S.C. § 3604(a) declares it unlawful, "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." Section 3604(d) also provides that it unlawful to represent to a person that a dwelling is unavailable for sale because of race or familial status when the dwelling is in fact available. 42 U.S.C. § 3604(c).

42 U.S.C. § 3605(a) provides that, "[i]t shall be unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to

Rights Act, Mich. Comp. Laws § 37.2502.[10]

Federal fair housing law prohibits the use of impermissible criteria such as race, color, or familial status in real estate transactions. 42 U.S.C. §§ 3603-31. Michigan has enacted an analogous provision through the Elliott-Larsen Civil Rights Act. Mich. Comp. Laws § 37.2502. Both federal and state housing discrimination claims are governed by the same legal framework. *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009); *Mencer v. Princeton Square Apartments*, 228 F.3d 631, 634 (6th Cir. 2000). Specifically, these cases are analyzed under the three-part, evidentiary burden-shifting paradigm first developed by the Supreme Court in the employment discrimination context, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and subsequently adapted

---

discriminate against any person in making available such a transaction, or in the terms of conditions of such a transaction, because of race [or] familial status . . ."

Finally, 42 U.S.C. § 3613(c) provides for the award of actual and punitive damages if the Court finds that a discriminatory housing practice has occurred. It also provides that the Court "may allow the prevailing party, other than the United States, a reasonable attorney's fee and costs." 42 U.S.C. § 3613(c).

[10] The relevant provisions of Section 37.2502(1) of the Elliot-Larsen Civil Rights Act provide:

> A person engaging in a real estate transaction, or a real estate broker or salesman, shall not on the basis of . . . race [or] familial status . . . (a) Refuse to engage in a real estate transaction with a person; (b) Discriminate against a person in the terms, conditions or privileges of a real estate transaction or in the furnishing of facilities or services in connection with a real estate transaction . . . (e) Represent to a person that real property is not available for inspection, sale, rental or lease when it is in fact so available . . . or refuse to permit a person to inspect real property, or otherwise make unavailable or deny real property to a person . . . (g) Offer, solicit, accept, use, or retain a listing of real property with the understanding that a person may be discriminated against in a real estate transaction . . .

by lower courts to fair housing claims. *Selden v. United States Dep't. of Hous. and Urban Dev.*, 785 F.2d 152, 160 (6th Cir. 1986). Under the *McDonnell Douglas* test, plaintiffs must overcome an initial burden of establishing a *prima facie* case of housing discrimination. *Yates*, 578 F.3d at 414-15; *Mencer*, 228 F.3d at 634. If a plaintiff is successful, the burden shifts to the defendant to offer evidence of a legitimate, nondiscriminatory reason for the adverse housing decision. *Yates*, 578 F.3d at 415; *Mencer*, 228 F.3d at 634. Finally, if the defendant is successful, the burden reverts back to the plaintiff to show that the proffered reason is a mere pretext for unlawful discrimination. *Yates*, 578 F.3d at 415; *Mencer*, 228 F.3d at 634.

A plaintiff may establish a *prima facie* case of discrimination by presenting direct evidence of intentional discrimination by a defendant. *Yates*, 578 F.3d at 415. Alternatively, a plaintiff may demonstrate circumstantial evidence which creates an inference of unlawful discrimination. *Id.* In the Sixth Circuit, a *prima facie* case of housing discrimination arises when a plaintiff shows that: (1) he or she is a member of a racial minority; (2) he or she applied for and was qualified to rent or purchase certain property or housing; (3) he or she was rejected; and (4) the housing remained available thereafter. *Id.*; *Mencer,* 228 F.3d at 634-35. This four-factor test is "not inflexible." *Yates*, 578 F.3d at 416. Satisfaction of its requirements creates an inference of discrimination "only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Furnco Const. Corp.*

---

Mich. Comp. Laws § 37.2502.

*v. Waters*, 438 U.S. 567, 577, 98 S. Ct. 2943, 57 L. Ed. 2d 957 (1978). The key question the Court must decide is "whether the plaintiffs have 'presented sufficient evidence to permit a reasonable jury to conclude [they] suffered' an adverse housing action 'under circumstances giving rise to an inference of unlawful discrimination.'" *Yates*, 578 F.3d at 416 (quoting *Blair v. Henry Filters, Inc.*, 505 F.3d 524, 529 (6th Cir. 2007) (alteration in original).

3. **Plaintiffs Have Failed To Come Forward With Sufficient Facts To Make A *Prima Facie* Case Of Housing Discrimination.**

Because there is no direct evidence of discrimination in this case, Plaintiffs' claims turn on the four-part test required to develop a *prima facie* case of housing discrimination. Each element is evaluated in turn.

a. **Although they are not members of a racial minority, Plaintiffs have demonstrated their status as members of a protected class.**

Defendants dispute Plaintiffs' status as a member of a racial minority on two grounds: (1) they contend that they had no knowledge of the race of Plaintiffs' children prior to signing the purchase agreement; and (2) they contend that Plaintiffs themselves are not part of a protected class of individuals. The first argument is misguided. While a *prima facie* case of racial discrimination inherently includes a requirement that the defendants knew that Plaintiffs were members of a racial minority, *see Jackson v. Whitehouse*, No. 92-CV-74725-DT, 1993 WL 1624960, at *5 (E.D. Mich. Nov. 23, 1993), Plaintiffs correctly point out that Defendants' lack of knowledge of Plaintiffs' adopted children prior to signing the purchase agreement is irrelevant. The claim is not that

14

Defendants refused to negotiate in the first instance, but that Defendants refused to complete the transaction after learning of the children's race.

Defendants' second challenge to this element also fails. Although Plaintiffs themselves are not members of a racial minority, the Sixth Circuit has held that a plaintiff himself need not be a member of a recognizable protected class. Rather, he need only allege that he was discriminated against on the basis of his association with a member of a recognizable protected class. *Johnson v. University of Cincinnati*, 215 F.3d 561, 575 (6th Cir. 2000) (held that a white Title VII plaintiff discharged for advocating on behalf of women and minorities in relation to employer's discriminatory hiring practices had standing to sue on the basis of the "racial situation in which [he] became involved."); *Tetro v. Popham*, 174 F.3d 988, 994 (6th Cir. 1999) (held that in a Title VII claim, "[a] white employee who is discharged because his child is biracial is discriminated against on the basis of his race, even though the root animus for the discrimination is a prejudice against the biracial child."). Because Plaintiffs have established that the alleged discrimination was based upon their association with their minority children, they have satisfied the first element of the *prima facie* test.

**b.  Plaintiffs have sufficiently established that they applied for and were qualified to purchase the property.**

As to the second element, plaintiffs can establish that they had applied for and were qualified to purchase the property in question by demonstrating that they were "ready and able to accept defendants' offer to rent or buy." *Mencer*, 228 F.3d at 635. Here, Plaintiffs

accepted the offer for sale and entered into an agreement to purchase the property from Defendants by land contract. This element of the *prima facie* test is also satisfied.

### c. Plaintiffs have not sufficiently established that their offer to purchase was rejected.

Accepting as true only Plaintiffs' factual allegations—and not Plaintiff's factual inferences or legal conclusions—the record indicates as follows. The parties executed an agreement to purchase and sell the property. On a subsequent visit to the property, with their African-American children, Plaintiffs became concerned with the condition of the septic system. Plaintiffs thereafter communicated to Defendants that their offer to purchase would be withdrawn if Defendants did not agree to amend the purchase agreement in order to guarantee the septic system for 120 days after the closing date. Defendants refused to amend the agreement, and subsequently did not attend the meeting scheduled to close the sale. Plaintiffs' later decision to proceed with the transaction without such addendum may or may not have been communicated to Defendants. Finally, at some point during her communications with Plaintiffs' real estate agent, Ms. Boss intimated that Mrs. Goschinski's reasons for not completing the transaction may have been related to her nostalgia and to her relationships with her neighbors.

Despite any inferences one could plausibly draw from this series of events, an essential, undisputed fact is that Plaintiffs communicated to Defendants that without an addendum to the purchase agreement they would withdraw their offer on July 24, 2008. Defendants' refusal to agree to amend the purchase agreement and assume potentially

substantial additional financial responsibility cannot be characterized as a rejection of Plaintiffs' offer. Even assuming that Plaintiffs did agree to proceed without the addendum and that this was communicated to Mrs. Goschinski, it was Plaintiffs' threat to withdraw their offer which caused the transaction to collapse. On this record, this is simply not a case of Defendants rejecting Plaintiffs' offer to purchase the property. Rather, this is a case of Plaintiffs insisting on an amendment to the purchase agreement under threat of rescinding their offer, of Defendants' refusing to agree to such amendment, and of a breakdown in communications and negotiations which ultimately led to the demise of the sale. Moreover, Defendants could not legally refuse to complete the transaction. The purchase agreement explicitly provided that, upon default, Plaintiffs could enforce the terms of the contract, which they apparently chose not to do. (Pls.' Resp. to Goschinski Mot., Ex. A.) For these reasons, Plaintiffs have failed to establish the third element of the *prima facie* test.

### d. Plaintiffs have established that the housing remained available after the transaction failed.

The property was re-listed for sale less than a month after the scheduled closing date. Defendants argue that despite this, the property was not available on the same terms because it was no longer available for purchase through a seller-financing arrangement and, therefore, did not "remain available" for purposes of the *prima facie* test. Defendants have not cited, and this Court is not aware of, any authority that states such a difference is dispositive of this element. It is plain that the property did remain available for purchase,

even if on different terms. Plaintiffs' have successfully demonstrated that the housing remained available.

Altogether, although Plaintiffs have established elements one, two, and four of the *prima facie* test, their claim fails because they failed to establish that Defendants rejected their offer. Rule 56 requires a non-moving party to come forward with evidence admissible at trial demonstrating that there is a material issue of fact in dispute. Notwithstanding the *prima facie* test, Plaintiffs have failed to present sufficient evidence by which a jury could conclude that they suffered adverse housing actions under circumstances creating an inference of unlawful discrimination.

**B.     Assuming *Arguendo* That Plaintiffs Established a *Prima Facie* Case, Defendants Have Articulated Legitimate, Non-Discriminatory Reasons for Refusing to Complete the Sale and Plaintiffs Have Failed to Meet Their Burden of Showing Pretext.**

Even if Plaintiffs had been able to establish a *prima facie* case, Defendants have articulated a legitimate, non-discriminatory reason for Mrs. Goschinski's failure to attend the closing. The purchase agreement bound Mr. and Mrs. Goschinski to a three-year land contract. The purchasers subsequently demanded additional concessions on two occasions, once under threat of unilaterally withdrawing from the transaction. Therefore, Mrs. Goschinski's belief that her refusal to accede to these additional concessions cancelled her obligations to close on the agreement was well-founded, and Defendants have, therefore, shifted the burden back to the Plaintiffs.

Plaintiffs' claims that the real reason the Goschinskis did not go through with the sale was the race of Plaintiffs' children is based almost entirely upon speculation, and Plaintiffs have failed to produce any evidence that the proffered reason was pretextual beyond these unsupported allegations. Without more, they have failed to meet their burden of showing pretext. Consequently, this Court will grant Defendants' motion for summary judgment on Plaintiffs' fair housing claims.

## IV. CONCLUSION

For these reasons,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendants Elizabeth Goschinski and Edward Goschinski's December 28, 2009 Motion for Summary Judgment

(docket #22) is GRANTED.

IT IS FURTHER ORDERED that Defendants Susan Boss, Jim Stevens, and Coldwell Banker Preferred's December 30, 2009 Motion for Summary Judgment (docket #23) is also GRANTED.[11]  Accordingly,

IT IS FURTHER ORDERED that Plaintiffs Kurt D. Kinde and Deborah L. Kinde's claims are hereby DISMISSED WITH PREJUDICE.


s/Gerald E. Rosen
Gerald E. Rosen
Chief Judge, United States District Court

Dated: March 8, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 8, 2010, by electronic and/or ordinary mail.

s/Ruth A.Gunther
Case Manager
(313) 234-5137

---

[11] Plaintiffs provided no independent evidence to support the separate claims of housing discrimination leveled against Coldwell Banker Preferred and its agents.  Moreover, to the extent that these claims are entirely derivative of the claims against the Goschinskis, they too must fail.